IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

YOLANDA COLON,

          Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner Social Security
Administration,

          Defendant.

CIVIL ACTION FILE

 NO. 1:13-CV-04129-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her applications for disability insurance benefits and supplemental security income. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

Plaintiff Yolanda Colon filed applications for disability insurance benefits and supplemental security income in June 2010, alleging that she became disabled on July 14, 2008. [Record ("R.") at 28, 118-28]. After her applications were denied initially

and on reconsideration, an administrative hearing was held on February 21, 2012.  [R. at 28, 44-72].  The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on March 9, 2012, and the Appeals Council denied Plaintiff's request for review on October 15, 2013.  [R. at 1-6, 28-37].  Plaintiff filed her complaint in this court on December 17, 2013, seeking judicial review of the Commissioner's final decision.  [Doc. 3].

## II.    Facts

The ALJ found that Plaintiff has HIV, cervical sprain/strain, and de Quervain's tenosynovitis bilaterally, impairments that are "severe" within the meaning of the Social Security regulations.  [R. at 30].  However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 34].  The ALJ found that, although Plaintiff is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that she can perform.  [R. at 35-36].  As a result, the ALJ concluded that Plaintiff has not been under a disability from July 14, 2008, the alleged disability onset date, through the date of the ALJ's decision.  [R. at 37].

2

The decision of the ALJ [R. at 28-37] states the relevant facts of this case as modified herein as follows:

At the hearing, the claimant presented with a bandage on her wrist, stating that she has worn this since 2008.  She stated that she uses it when the weather is bad or if she uses the hand repeatedly.  She also reported use of a soft cervical collar "most of the time" since 2007.  These devices were recommended by treating orthopedists.  The claimant stated that she last worked at UPS as a sorter and loader but injured her wrist after which she stopped working.  She stated that she underwent surgery on the right wrist in July 2008 and has not attempted to find work since that time.  The claimant alleged ongoing pain and limitations due to neck and wrist pain.  She has been treated at an orthopedic facility but has not been able to afford treatment in the preceding 18 months.  She was diagnosed with HIV but denied any limiting symptoms.  Ms. Colon stated that she lives alone but has help with chores.  She admitted that she is able to do some light housework but only feels well enough to do so "off and on" about once a week.  Even then, she is only able to work about 15 minutes.  She stated that she spends most of her day lying down and reading magazines.  She stated that she tries to get up but feels as if she is going to pass out.

3

Records from R. Yang, M.D., reveal that the claimant was treated for a period of time for a variety of benign ailments. She was treated conservatively with acceptable resolution. (Exhibit 1F). Dr. Yang's records do not include any probative information relative to the allegedly disabling impairments.

During the same time period, Ms. Colon was evaluated for a second opinion at Peachtree Orthopedic presenting on January 25, 2007, for work-related injury to the cervical spine. She described neck pain involving the cervical paraspinal muscles and both trapezius muscles. She also described pain extending up to the occiput as well as right posterior scapular pain. The claimant related this pain to an injury that she sustained at work on December 10, 2006, at which time she was loading a truck and was performing repetitive lifting and bending. She was moving packages throughout this time and felt a pop in her neck and began experiencing pain in the right side of the neck. Following an initial evaluation which included orthopedic clinical and MRI considered to be normal, she underwent physical therapy. Following that, she was at maximum medical improvement and released to return to work without restriction.

The claimant complained that she had experienced chronic neck pain since that time and had also received chiropractic treatment over a period of three years. Of note, Ms. Colon volunteered that she had been involved in a remote motor vehicle accident

4

in 1982 and had neck pain off and on since that time. Currently, she reported pain with lifting and prolonged sitting. She stated that she can use a support and have some relief of pain. Review of prior x-rays and an MRI garnered concurrence of opinion that the studies were normal. The claimant admitted that her current medications consisted only of over the counter Aleve. On examination, there was significant tenderness to palpation about the cervico-thoracic midline area and both trapezius muscles. She had unrestricted cervical flexion and extension and moderate restriction in right and left rotation. Spurling's maneuver was negative to the right and left with associated neck pain. Motor functions were graded 5/5 in shoulder abduction, elbow flexion and extension, wrist flexion and extension, and in hand intrinsic muscles and finger flexors bilaterally. Sensation was intact to light touch in both upper extremities. Deep tendon reflexes were 1+ in both triceps tendons; 1-2+ in both biceps tendons; 1-2+ in both brachial radialis tendons; 2+ Achilles reflexes bilaterally; and 2+ patellar reflexes bilaterally. There was no ankle clonus on the right or left. Assessment was remote cervical strain/subjective pain without any specific objective findings. The examiner, Lee Kelly, M.D., stated that he agreed with Dr. Edwards with regards to the assigned date of return to work without restriction and the date of maximal medical improvement. He stated that the claimant did not have any basis for assignment of a

5

permanent partial impairment rating with regards to alleged work-related injury of December 10, 2006, and that her treatment should involve an

ongoing home exercise program.  It was stated that the claimant did not require any other treatment.

In follow-up visit of February 2, 2007, the claimant was noted to be in no acute distress.  She was alert and oriented times three.  She ambulated with a normal gait. Examination of the cervical spine revealed full range of motion, diffuse tenderness, and a negative Spurlings test.  Examination of the shoulder and elbow revealed full and painless motion.  Examination of the wrist and hand revealed tenderness over the radial styloid.  The claimant had a positive Finkelstein's test and was minimally tender at the anatomic snuffbox.  It was not clear whether the tenderness was coming from the first dorsal compartment tendons or from the scaphoid.  She had intact radial and ulnar pulses and intact sensation distally.  Diagnostic x-ray of the wrist revealed no evidence of fracture or dislocation.  Scaphoid view with the wrist in ulnar deviation was obtained that showed no evidence of acute fracture or chronic fracture of the scaphoid. Impression was right wrist de Quervain's tenosynovitis.  Secondarily, a cortisone injection was administered, and she was placed in a thumb spica splint for treatment. (Exhibit 2F).

6

Thereafter, records from Medipractic Pain Management and ProHealth Integrated Medical reveal receipt of both trigger point injections and physiological therapies. Longitudinally, the claimant reported benefit from treatment; however, on January 14, 2008, she stated that she "feels a need to be off work awhile." Still, subjective allegations were primarily of limited cervical movement and muscle tightness garnering impression of myalgia, myoscitis and spasm. There was waxing/waning of symptoms. On March 24, she reported recurrent neck pain occurring while in church. On April 24, she reported feeling better following a course of steroids. And in June 2008, she reported feeling "much better." Concomitantly, objective findings were considered only mildly positive.

In January 2009, Constance Cowdan, NP, reported normal range of motion in the cervical spine globally with no pain; normal range of motion in the lumbar spine; 2+ reflexes and normal straight leg raising and other diagnostic testing. Other than tenderness to the trapezius muscles, examination was overall normal. (Exhibits 3F and 4F). Diagnostically, a brain CT on January 28, 2010, revealed incidental arachnid cyst within the cerebellar cistern, but, otherwise, it was an unremarkable exam. A repeat study of December 7, 2010, revealed no interval changes. (Exhibit 9F). Due to ongoing complaints of neck pain, a cervical MRI on October 14, 2008, was performed,

7

revealing tiny midline disc spur at C4/5 and C5/6, noncompressive. There was abnormal appearance of the upper posterior fossa in the region of the superior cerebellar cistern, though not fully visualized. (Exhibit 2F). Ms. Colon also underwent left wrist arthrogram on April 21, 2008, showing a possible tear of the scapholunate interosseous ligament and pinhole TFC perforation. Otherwise, the examination was normal. A right wrist arthrogram revealed a TFCC central perforation but was otherwise unremarkable. Specifically, the scapholunate interosseous ligament appeared intact.

As indicated in the claimant's hearing testimony, Ms. Colon also sought chiropractic treatment for cervical spine and shoulder pain beginning in July 2010. Following a series of chiropractic modalities, Matthew Shin, D.C., submitted a "To Whom it May Concern" letter dated December 20, 2010, in which he noted treatment for neck pain. He noted that Ms. Colon rated her neck pain as "moderate" with occasional occurrence (25-50% of the time) with aggravating factors of bending. Relieving factor was reported as "rest." He noted that the claimant's general movement was guarded; however, during the course of treatment, various testing was performed which proved negative. These included shoulder depression test, Jackson cervical compression test, and cervical distraction test. A cervical x-ray revealed mild

8

cervical hypolordotic curve.  Overall diagnostic impression was cervical segment dysfunction, cervical strain/sprain, and cervicalgia.  Dr. Shin stated that the claimant had been treated with spinal manipulation, traction, therapeutic exercise, and other physiotherapy modalities which were used: to reduce nerve root irritation, pain reflexes, and biomechanical stability; to restore normal range of motion of the spine; and to decrease muscle spasm.  (Exhibit 11F).

On November 5, 2010, the claimant was seen status post right wrist de Quervain's tenosynovitis release, bilateral TFCC tear.  The claimant stated that she continued to have bilateral wrist pain with the left being worse than the right.  The area of the de Quervain's release was not painful.  She was complaining of diffuse pain at the volar aspect of her wrist.  She complained of pain both on the ulnar and the radial aspect of her left wrist.  When probed about the level of pain, she stated that the pain was not bad enough for her to want to proceed with surgery at this point.  This offer was made because she reported her pain level as an eight to nine out of ten.  She described the pain as being dull and achy.  On physical examination, Ms. Colon was in no acute distress.  Examination of her bilateral wrists revealed no radial styloid tenderness.  She had full range of motion.  She had a negative Finkelstein's test.  She had vague tenderness at the ulnar carpal sulcus.  Impression was bilateral de

9

Quervain's tenosynovitis status post right de Quervain's release and bilateral TFCC tear with no indication for surgery.  The claimant was discharged to follow-up on an as needed basis and TNS was recommended for pain management.  She was considered to be at maximum medical improvement and was assigned two percent permanent partial impairment.  Celebrex and Prilosec and physical/occupational therapy prescription were given.  (Exhibits 10F and 14F).

Records of treatment/monitoring of HIV status from A. Lopez, M.D., reveal effective therapies/medication for the condition with no notable immunological issues.  These records offer commentary relative to the claimant's ongoing orthopedic and worker's compensation/disability issues but include no probative information relative to that situation.  Dr. Lopez declined to complete a disability report at the claimant's request, indicating that he was not able to comment on her orthopedic condition.  The record regarding HIV is remarkable for a hospital admission on September 29, 2009, for treatment of bilateral multilobar pneumonia, most likely viral.  Secondary diagnoses were HIV positive with bone marrow suppression due to viral infection; thrombocytopenia, again due to bone marrow suppression; leucopenia; and hypokalemia.  During the course of treatment which included various antibiotics/antifungals, the claimant was continued on antiretroviral therapy and

10

realized progressive improvement.  At discharge, she was felt to be stable for discharge home on October 4, 2009, to follow with her infectious disease physician.  Ms. Colon followed subsequently at the DeKalb health center.  (Exhibits 5F, 6F, 7F).

On June 30, 2011, Richard Zabowski, M.D.,[1] submitted a pain assessment and physical assessment in which he limited the claimant to lifting a maximum of five pounds occasionally and one pound frequently.  He stated that she could: never climb; rarely push/pull with the left upper or lower extremities and occasionally with the right upper and lower extremities; bend, stoop, and perform fine manipulation; and occasionally reach with the upper extremities.  Dr. Zabowski also stated that the claimant's pain was to such extent that she would be distracted from performing daily work or activities and cause distraction from tasks or total abandonment from tasks. (Exhibit 15F/2, 4).

Included in the record is a medical assessment submitted by Dr. Nancy Koughan dated April 11, 2011.  The report indicates that the claimant was limited to lifting ten pounds occasionally and five pounds frequently, sitting four hours, and standing/walking one hour in an eight-hour workday.  With respect to postural

---

[1]Dr. Zabowski's last name is misspelled a number of times in the record.  [R. at 35, 517, 519].

11

maneuvers and manipulative abilities the reporter gave conflicting opinions, i.e., stating that the claimant would have the ability to occasionally, rarely, and never perform gross manipulation and reach.  A similarly confusing opinion was given in regard to all other nonexertional abilities.  Dr. Koughan offered a caveat that the claimant needed a comprehensive disability examination and stated "we do not have records nor are we her primary care providers."  (Exhibit 15F).

In an assessment at the HIV counseling center dated July 1, 2010, the claimant responded "no" to the inquiry of whether she had experienced difficulty doing activities involving concentrating and thinking.  As of February 2011, the claimant's HIV status was "well controlled."  (Exhibit 16F and 17F).

Aside from de Quervain's release, the claimant's treatment has been conservative in nature with no referrals for neck/other surgeries or other aggressive measures.  In fact, post-op records show that when probed about the level of pain affecting the wrist, which she reported as an eight to nine, she stated that the pain was not bad enough for her to want to proceed with another surgery at that point.  All clinical and diagnostic examinations have been relatively unremarkable.  Even Ms. Colon's orthopedist reported in October 2008, only a slight disc bulge and no significant stenosis or nerve impingement of the wrists.  The claimant is not

AO 72A
(Rev.8/82)

maintained on any chronic pain medications.  Her pain is controlled through the use of non-prescription oral analgesics only.  She reported at the hearing that she uses Aleve.

Relative to the diagnosis of HIV, this condition has been longstanding and is under control with medications.  Regular follow up with appropriate sources is negative for AIDS signs/symptoms.  There have been no frequent infections or other symptoms; the longitudinal record showing only one hospitalization for pneumonia and one emergency room visit for bronchitis.  The claimant has a low viral load and is considered essentially asymptomatic.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically

AO 72A

(Rev.8/82)

acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   Id. at 1440.   "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).   Under the regulations as promulgated by the Commissioner, a five step sequential procedure is

14

followed in order to determine whether a claimant has met the burden of proving her disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not engaged in substantial gainful activity. See id. The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments. See id. At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. See id. "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

15

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since July 14, 2008, the alleged onset date.  (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

3.    The claimant has the following severe impairments: HIV; cervical sprain/strain; and de Quervain's tenosynovitis bilaterally.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she is restricted against frequent or repetitive handling or fingering functions.

6.    The claimant is unable to perform any past relevant work.  (20 C.F.R. §§ 404.1565 and 416.965).

7.    The claimant was born on December 12, 1966, and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (20 C.F.R. §§ 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English.  (20 C.F.R. §§ 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

16

that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from July 14, 2008, through the date of the ALJ's decision.  (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[R. at 30-37].

## V.  Discussion

Plaintiff Colon argues that the ALJ committed reversible error when he concluded that Plaintiff is not disabled.  [Doc. 10].  According to Plaintiff, the ALJ acted improperly when he rejected the opinions of two treating physicians, Dr. Nancy Koughan and Dr. Richard Zabowski.  [Id. at 4-8].  Plaintiff also argues that at the administrative hearing, the ALJ failed to pose a hypothetical question to the vocational expert which included all of Plaintiff's limitations.  [Id. at 8-10].  In addition, Plaintiff contends that the ALJ should have included in the residual functional capacity assessment nonexertional limitations resulting from her pain.  [Id.].

The relevant regulations promulgated by the Social Security Administration state in pertinent part:

17

(2)     Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . .

(i)     Generally, the longer a treating source has treated you . . . the more weight we will give to the source's medical opinion. . . .

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  A treating source's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  If the treating source's opinion is not given controlling weight, then the Commissioner is required to apply the following six factors in determining the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

The Eleventh Circuit Court of Appeals has consistently held that opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner unless good cause exists to discredit these opinions.  See Lewis, 125

18

F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11ᵗʰ Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11ᵗʰ Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11ᵗʰ Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11ᵗʰ Cir. 1985). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   Winschel v. Comm'r of Social Security, 631 F.3d 1176, 1179 (11ᵗʰ Cir. 2011) (quoting Phillips, 357 F.3d at 1241). An ALJ may disregard a treating physician's opinion with good cause, but his reasons for doing so must be clearly articulated in his decision. Id.

In the present case, Dr. Koughan completed an evaluation of Plaintiff's physical capacities on a form dated April 11, 2011. [R. at 518]. As the ALJ noted, Dr. Koughan opined that Plaintiff could only lift ten pounds occasionally and five pounds frequently, could sit for four hours in an eight-hour workday, and could stand or walk for only one hour in an eight-hour workday. [R. at 33, 518]. The ALJ rejected Dr. Koughan's opinion based in part on the ALJ's finding that the physician was "not one of the claimant's providers." [R. at 35]. Plaintiff argues that Dr. Koughan was her treating physician and that the ALJ failed to evaluate the physician's opinion under the proper legal standard. [Doc. 10 at 4-6].

The relevant Social Security regulation defines a "treating source" as a physician, psychologist, or other acceptable medical source who has provided the claimant with "medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.  "A claimant generally has an 'ongoing treatment relationship' with a physician when medical evidence establishes that the claimant sees or has seen the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s).'"  Nyberg v. Comm'r of Social Security, 179 Fed. Appx. 589, 591 (11th Cir. 2006) (quoting 20 C.F.R. § 404.1502).  As discussed *supra*, more weight is given to treating source opinions because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In the present case, the court finds that the ALJ did not err when he found that Dr. Koughan was not a treating physician.  The Commissioner notes that when Dr. Koughan's evaluation was submitted to the Administration, Plaintiff's attorney did not

identify the physician or state that she was a treating source.[2] [R. at 516]. The medical record indicates that Plaintiff saw Dr. Koughan only two times at the DeKalb County Board of Health. [R. at 572, 682]. A doctor who has seen a claimant on two occasions would not normally be described as having "an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. Moreover, as the ALJ explained, Dr. Koughan wrote in the evaluation, "We do not have records, nor are we her primary care providers." [R. at 518]. Dr. Koughan also stated that Plaintiff "needs a comprehensive disability exam" and that "she was a workman's comp case at UPS." [Id.]. These are not the type of comments normally made by a physician who is able to "provide a detailed, longitudinal picture" of a claimant's impairments. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Instead, the statements made by Dr. Koughan reveal that she was not familiar with Plaintiff, that she was not Plaintiff's primary care physician, and that she had none of Plaintiff's medical records. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Given these facts, the court finds that it was entirely reasonable for the ALJ to conclude that Dr. Koughan was not one of Plaintiff's treating

---

[2]Making matters even more difficult for the ALJ is the fact that the evaluation form contains no typed identification of Dr. Koughan, and the printed name is difficult to read. [R. at 518].

21

physicians.  [R. at 518].  As a result, there was no presumption that Dr. Koughan's opinion was entitled to substantial or considerable weight.

Even if Dr. Koughan had been a treating physician, the ALJ had good cause to reject her opinion.  Dr. Koughan, as previously discussed, stated in her report that she did not have Plaintiff's records and that Plaintiff "needs a comprehensive disability exam."  [R. at 34, 35, 518].  Despite the lack of medical records available to Dr. Koughan, she offered a detailed opinion about Plaintiff's physical limitations.  [R. at 518].  This fact alone provided the ALJ with good cause to reject Dr. Koughan's opinion.  The ALJ also pointed out that Dr. Koughan gave conflicting opinions with regard to Plaintiff's postural maneuvers and manipulative abilities.  [R. at 33].  For example, in the areas of reaching and gross manipulation, the physician opined that Plaintiff has the ability to occasionally, rarely, *and* never perform these activities. [Id.]. Obviously, a claimant who has no ability to reach cannot, at the same time, have the ability to reach occasionally.  Dr. Koughan's findings are confusing, and the ALJ noted this in his decision.  In summary, the ALJ offered specific reasons for rejecting Dr. Koughan's opinion and these reasons were supported by substantial evidence in the record.  Accordingly, the court finds that the ALJ had good cause not to credit Dr. Koughan's opinion.  See Winschel, 631 F.3d at 1179; Leiter v. Comm'r of Social

22

Security Admin., 377 Fed. Appx. 944, 949 (11th Cir. 2010) ("Because the ALJ articulated specific reasons for declining to give the treating physician's opinion controlling weight, and these findings were supported by substantial evidence in the record, we hold that the ALJ had good cause to reject this opinion."); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) ("Where our limited review precludes re-weighing the evidence anew . . . , and as the ALJ articulated specific reasons for failing to give Dr. Pardo's opinion controlling weight, we find no reversible error.") (internal citation omitted).

Plaintiff also argues that the ALJ erroneously rejected the opinion of Dr. Richard Zabowski, a treating chiropractor. [Doc. 10 at 6-7]. Dr. Zabowski completed an assessment of pain in June 2011 and opined that Plaintiff's pain is present to such an extent as to be distracting to adequate performance of daily activities or work. [R. at 517]. The chiropractor also found that physical activity will greatly increase Plaintiff's pain and that the side effects of her medication will totally restrict her and prevent her from functioning at a productive level of work. [Id.]. In a physical capacities evaluation completed by Dr. Zabowski around the same time that he completed the pain assessment, he opined that Plaintiff could only lift and/or carry five pounds occasionally and one pound frequently. [R. at 519]. Dr. Zabowski also stated that

23

Plaintiff has a number of limitations in her postural and manipulative abilities and that she would miss more than four days of work per month as a result of her impairments. [R. at 519].  The ALJ discussed the limitations found by Dr. Zabowski and stated that he rejected them.  [R. at 33-35].

The court finds that the ALJ's rejection of Dr. Zabowski's opinion did not amount to reversible error.  Because Dr. Zabowski is a chiropractor, he "is not considered an 'acceptable source' and, thus, his opinion cannot establish the existence of an impairment." Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)).  The fact that Dr. Zabowski is not an acceptable source means that he does not fit within the regulations' definition of a "treating source" and his opinion was not entitled to the significant weight that should normally be given to the opinions of treating sources.  20 C.F.R. § 404.1502. Despite Dr. Zabowski's status as a non-acceptable source, the ALJ did not ignore his opinion.  The ALJ specifically cited to and summarized the chiropractor's evaluations and stated that no weight was being assigned to them.  [R. at 33-35].  The ALJ explained that the evidence did not support Dr. Zabowski's finding that Plaintiff's pain is present to such an extent as to be distracting to adequate performance of daily activities or work.  [R. at 35, 517].  The ALJ also wrote that in contrast to Dr.

AO 72A

(Rev.8/82)

Zabowski's opinion, Plaintiff reported on July 1, 2010, that she had not experienced difficulties doing activities involving concentrating or thinking. [R. at 34, 569]. In light of these facts, the court finds that the ALJ did not err when he rejected the opinion from Dr. Zabowski, especially given the chiropractor's status as a non-treating source.

Plaintiff argues that the ALJ erred because he "made no attempt to clarify or resolve the absence of records from [Dr. Zabowski], who was mentioned both in testimony and written notice to the Agency regarding recent treatment." [Doc. 10 at 7]. According to Plaintiff, the ALJ should have contacted Dr. Zabowski and sought records from him at Kostas Chiropractic Clinics, where he works. [Id.]. "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Without a full and fair record, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id. In the present case, however, it is not clear whether any treatment records exist from Dr. Zabowski. When Dr. Zabowski was asked on the physical capacities evaluation to describe the basis for his opinion, he did not cite to any of his treatment notes. Instead, he cited to the fact that Plaintiff had

25

sought treatment at the emergency room "15-20 times over [the] last 3-4 years due to this problem." [R. at 519]. Dr. Zabowski also noted that Plaintiff had surgery on her right wrist and that surgery was recommended for the left wrist. [Id.]. Given the fact that Dr. Zabowski did not rely on his own records regarding his alleged treatment of Plaintiff in support of his opinion, it was reasonable that the ALJ did not seek to contact him and request treatment records.

More importantly, the Eleventh Circuit has made it clear that "the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912); accord Doughty, 245 F.3d at 1278. The relevant regulations similarly provide that the burden is on the claimant to "furnish medical and other evidence" which proves that she is disabled.   20 C.F.R. §§ 404.1512(a), 416.912(a).   Plaintiff was represented by counsel throughout the administrative process, and her attorney was free to obtain chiropractic records from Dr. Zabowski and provide this information to the Social Security Administration in support of her claim.  The fact that Plaintiff's attorney declined to do so did not impose on the ALJ a special duty to seek out chiropractic records from a non-acceptable

26

medical source.  For these reasons, the undersigned finds that the ALJ had no duty to develop the record further.

Plaintiff also contends that the ALJ posed an incomplete hypothetical question to the vocational expert at the administrative hearing.  [Doc. 10 at 8-10].  "[T]he ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).  However, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  Crawford, 363 F.3d at 1161.  In the present case, the ALJ posed a complete hypothetical.  The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except that she is restricted against frequent or repetitive handling or fingering functions.  [R. at 34].  All of these limitations were included in the ALJ's hypothetical to the vocational expert.  [R. at 34, 62-66].

Plaintiff next argues that the ALJ should have included in the RFC assessment nonexertional limitations resulting from her pain.  Plaintiff notes the "extensive documentation of [her] complaints of pain since her diagnoses of cervical sprain/strain and de Quervain's tenosynovitis bilaterally."  [Doc. 10 at 10].  Where a claimant's testimony, if credited, could support the claimant's disability, the ALJ must make and explain a finding concerning the credibility of the claimant's testimony.  See Viehman

27

v. Schweiker, 679 F.2d 223, 227-28 (11th Cir. 1982). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The relevant Social Security regulations provide that factors which will be considered by the ALJ in evaluating a claimant's subjective symptoms include: daily activities; location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate her symptoms; treatment received and measures used, other than medication, for the relief of symptoms; and any other factors concerning the functional limitations and restrictions due to the claimant's symptoms. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing MacGregor, 786 F.2d at 1054).

The ALJ found that Plaintiff's cervical sprain/strain, de Quervain's tenosynovitis, and HIV are severe impairments and that as a result, she was limited to light work and could not engage in frequent or repetitive handling or fingering. However, the ALJ explained that he did not credit Plaintiff's "statements concerning

28

the intensity, persistence and limiting effects" of her alleged symptoms to the extent

that they were inconsistent with the RFC assessment.  [R. at 34].  Despite Plaintiff's

arguments to the contrary, the court finds that the ALJ offered numerous reasons

supported by the record for not fully crediting Plaintiff's subjective complaints of

disabling symptoms.  The ALJ noted that with regard to her diagnosis of HIV, the

condition has been longstanding and was "well controlled."  [R. at 34-35].  The ALJ

wrote: "Regular follow up with appropriate sources is negative for AIDS

signs/symptoms.  There have been no frequent infections or other symptoms; the

longitudinal record showing only one hospitalization for pneumonia and one

emergency room visit for bronchitis.  The claimant has a low viral load and is

considered essentially asymptomatic."  [R. at 35].  With regard to nonexertional

limitations, as discussed *supra*, the ALJ cited to Plaintiff's self-report that she had not

experienced difficulties doing activities involving concentration or thinking. [R. at 34,

569].  In support of the RFC assessment, the ALJ pointed out that "clinical and

diagnostic examinations have been relatively unremarkable with no documentation of

any musculoskeletal abnormality which could reasonably be expected to result in the

degree of pain alleged."  [R. at 35].  The ALJ wrote that "[e]ven Ms. Colon's

29

orthopedist reported in October 2008, only a slight disc bulge and no significant stenosis or nerve impingement of the wrists." [Id.].

The ALJ also cited to Plaintiff's conservative treatment in support of his finding that her complaints of disabling pain were not entirely credible. This was proper. "When evaluating a claimant's statements regarding his symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints." Beegle v. Social Security Admin., Comm'r, 482 Fed. Appx. 483, 487 (11th Cir. 2012) (per curiam) (citing SSR 96-7p). The ALJ wrote, "Aside from de Quervain's release, the claimant's treatment has been conservative in nature with no referrals for neck/other surgeries or other aggressive measures. In fact, post-op records show that when probed about the level of pain affecting the wrist, she stated that the pain was not bad enough for her to want to proceed with another surgery at that point." [R. at 35]. The ALJ noted that Plaintiff's "pain is controlled through the use of non-prescription oral analgesics only," she does not require the use of ambulatory aide, and she "does not currently participate in any physical or rehabilitative therapies." [Id.]. The ALJ also pointed to the fact that Plaintiff "has not required any undue emergency care or inpatient management for pain control and has

30

never required treatment with injection type therapies such as epidural steroids or the administration of other alternate therapies." [R. at 35].

In light of this evidence, the court finds that the ALJ applied the proper legal standard when he evaluated Plaintiff's testimony. The ALJ offered a detailed discussion of the record, and he provided numerous specific reasons for not fully crediting Plaintiff's statements about her alleged symptoms. Furthermore, the reasons articulated by the ALJ were supported by evidence in the record.

## VI. Conclusion

For all the foregoing reasons and cited authority, the court finds that the decision of the ALJ was supported by substantial evidence and was the result of an application of proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**SO ORDERED**, this 6th day of March, 2015.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

31